UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

ROBIN PAGE, FABRICIO VASQUEZ,
WESTIN LANDIS

        Plaintiffs,

v.

DEPUTY SHERIFF STEVEN O'LEARY, in
his individual capacity, and
SHERIFF WILLIAM D. SNYDER, in his
official capacity,

        Defendants.

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW, Plaintiffs, ROBIN PAGE, FABRICIO VASQUEZ and WESTIN LANDIS, sue Defendants, DEPUTY SHERIFF STEVEN O'LEARY, in his individual capacity, and SHERIFF WILLIAM D. SNYDER, in his official capacity and allege:

### INTRODUCTION

1. This is an action involving the violation of Plaintiffs' federal civil rights, by Defendants acting under color of state law, and contains state causes of action pursuant to this Court's concurrent and pendant jurisdiction. The aggregate amount of damages claimed by the Plaintiffs against all Defendants is in excess of $75,000.00.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States and pursuant to 28 U.S.C. §

1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured to the Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

3. Plaintiffs' claims for relief are predicated on 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiffs by the Constitution and laws of the United States and by 42 U.S.C. § 1988 which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

4. Venue is appropriate in this Court as the illegal acts alleged to have been committed by Defendants against Plaintiff occurred wholly within Martin County, Florida.

5. Written notices of Plaintiffs' claims asserted were submitted to the Florida Sheriffs Risk Management Fund, the Martin County Sheriff's Office and the Department of Financial Services of the State of Florida, copies of which are attached hereto as Exhibit A.

6. All conditions precedent to bringing this action and for recovery of attorney's fees under state and federal law have occurred or have been satisfied.

## PARTIES

7. Plaintiff, ROBIN PAGE, (hereinafter "PAGE") is a citizen of the State of Florida residing in Martin County and is otherwise *sui juris*.

8. Plaintiff, FABRICIO VASQUEZ, (hereinafter "VASQUEZ") is a citizen of the State of Florida residing in Martin County and is otherwise *sui juris*.

9. Plaintiff, WESTON LANDIS, (hereinafter "LANDIS") is a citizen of the State of Florida residing in Martin County and is otherwise *sui juris*.

10. Defendant, DEPUTY SHERIFF STEVEN O'LEARY (hereinafter "O'LEARY"), at all times material to this action, was employed by the Martin County Sheriff's Office (hereinafter "MCSO") as a deputy sheriff. He is sued in his individual capacity.

11. Defendant, WILLIAM D. SNYDER, (hereinafter "SNYDER"), is the Sheriff of Martin County, Florida and is otherwise sui juris. At all material times, SNYDER was in charge of the Martin County Sheriff's Office, its agents and employees, including supervising, training and establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida common law. SNYDER is sued in his official capacity.

## UNDERLYING FACTS

12. In September 2017, Martin County was designated a High Intensity Drug Trafficking Area by the National Drug Control Policy, qualifying MCSO for federal grant money on an annual basis so long as the designation is maintained.

13. At all times material, MCSO deputies were under pressure to increase the number of narcotics arrests in Martin County to continue to qualify for the federal grant money.

14. O'LEARY was hired by the MCSO on February 1, 2018.

15. On March 21, 2018, O'LEARY was assigned to the MCSO Uniform Road Patrol Division.

16. At all times material, O'LEARY was motivated by MCSO pressure to increase narcotics arrests as well as his own ambition for promotion to become a narcotics detective within MCSO.

17. Following his date of hire, O'LEARY observed and learned MCSO customs and practices as it related to narcotics investigations by assisting other deputies within MCSO and even assisting SHERIFF SNYDER personally with vehicle searches following traffic stops.

18. From these observations and experiences with MCSO deputies and SNYDER, O'LEARY learned MCSO practices related to reasonable suspicion; probable cause; search and seizure; securing and inventory of evidence.

19. On or about May 3, 2018, O'LEARY began falsifying official statements, tampering with evidence, planting evidence and falsely arresting citizens in order to increase his narcotics arrests for the MCSO (see attached Exhibit B, Warrant and Complaint Affidavit, State of Florida vs. Steven O'Leary, Case No. 2019-CF-872).

20. O'LEARY continued to engage in this pattern of misconduct from May 2018 through December 30, 2018.

21. MCSO Case Number 18-22904:

> During his eleven months working for the Martin County Sheriff's Office Steven O'Leary made eighty-six arrests for narcotics related charges. In many cases, especially early in his tenure, these cases centered on Cannabis and THC oil. In the vast majority of those cases he was successful in locating and identifying the controlled substances in question. However, as his number of felony cases increased, the number of instances where no controlled substance was found also exponentially increased. (Exhibit B)

22. During the 11-month timeframe O'LEARY was actively committing felonies against citizens of Martin County, including the Plaintiffs, he worked side by side to process his arrests with numerous MCSO Deputies including K-9 Units, evidence custodians, shift supervising sergeants and even Prosecutors with the State Attorney's Office.

23. MCSO Complaint Affidavit:

> "Base[d] on the investigation conducted by the Martin County Sheriff's Office your Affiant has probable cause to believe that between February 2018 and January 2019, Steven O'Leary, while under the color of law, employed as a Deputy Sheriff for the Martin County Sheriff's Office, engaged in an ongoing pattern of Official Misconduct, Fabricating Evidence, False Imprisonment, and False Official Statement."

24. Eventually, prosecutors noticed irregularities in his arrests, and finally one prosecutor blew the whistle on O'LEARY.

25. On August 9, 2019, the State Attorney's Office filed a 50 count information against O'LEARY before Judge Bauer in Martin County Circuit Court. (See attached Exhibit C)

26. O'LEARY has been charged with seventeen (17) counts of Official Misconduct.

27. O'LEARY has been charged with nine (9) counts of False Official Statement.

28. O'LEARY has been charged with eight (8) counts of Tampering With Evidence.

29. O'LEARY has been charged with thirteen (13) counts of False Imprisonment.

30. O'LEARY has been charged with one count of Second Degree Petit Theft and one count of Battery.

31. During the eleven (11) month timeframe, there were facts placing SNYDER on actual or constructive notice as to O'LEARY's illegal actions, including: the failure to impound vehicles in which drugs had been found following arrests; the size and quantity of narcotics he was seizing compared to historical drug arrests in Martin County; the frequency with which he was making narcotics arrests compared to other road patrol deputies within MCSO.

32. Nevertheless, O'LEARY's shift partners and shift supervisors at MCSO stood idly by while O'LEARY made numerous false arrests.

33. One fellow Deputy who was personally involved with the false arrests of many of the Plaintiffs was K-9 Deputy Justin Albauer, who's K-9, according to arrest affidavits, alerted to the presence of narcotics in vehicles, which simply was not present when the evidence was finally tested by the crime lab.

34. The failure of the MCSO to catch on to O'LEARY's illegal actions over the course of 11 months was a failure of department management and command structure.

**42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFFS'**
**CIVIL RIGHTS AGAINST O'LEARY**
**(Search & Seizure Without a Warrant or Probable Cause)**

35. Plaintiffs adopt and allege the allegations in paragraphs 1 through 34 as though fully set forth herein.

36. The actions of O'LEARY occurred within the scope of his employment with MCSO, under color of state law, having occurred within the authorized time and space limits of his duties and for a purpose to serve SNYDER.

37. At all times material hereto, O'LEARY had a legal duty not to subject Plaintiffs to unreasonable search and seizure, without probable cause, warrant or exigent circumstances.

38. O'LEARY subjected Plaintiffs to unreasonable search and seizure, without probable cause, warrant or exigent circumstances, which was objectively unreasonable in light of the facts and circumstances confronting O'LEARY.

39. O'LEARY violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and violated Plaintiffs' rights to be free from unreasonable searches and seizures by searching their persons and vehicles without a search warrant, probable cause or exigent circumstances.

40. These violations were of a type and character as to which any reasonable person would be aware, and further, the law prohibiting such conduct as unconstitutional is clearly established in Florida, in federal case law, including that of the Federal Court of Appeals of the United States, 11th Circuit, and under the case law of the U.S. Supreme Court.

41. The aforesaid acts of O'LEARY were performed knowingly, intentionally, and maliciously, and/or were performed in a reckless manner with callous and deliberate indifference

to the health, safety and civil rights of all Plaintiffs and for this reason, Plaintiffs are entitled to an award of punitive damages.

42. As a direct and proximate result of the unlawful conduct of O'LEARY as aforesaid, Plaintiffs were deprived of their civil rights and forced to suffer great aggravation, humiliation, embarrassment, mental anguish and harm, loss of standing in the community and pecuniary losses including loss of income and loss of earning capacity.

### 42 U.S.C. 1983 DEPRIVATION OF PLAINTIFFS' CIVIL RIGHTS AGAINST DEPUTY O'LEARY – FALSE ARREST AND IMPRISONMENT

43. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 34, inclusive, as if fully set forth herein.

44. The actions of O'LEARY occurred within the scope of his employment with the MCSO, under color of state law, having occurred within the authorized time and space limits of his duties and for a purpose to serve SNYDER.

45. The arrests and detention of Plaintiffs were not objectively reasonable under the totality of the circumstances.

46. At all times material hereto, O'LEARY had a legal duty not to subject Plaintiffs to arrest for an alleged crime that Plaintiffs did not commit and to imprison them in connection with same. O'LEARY willfully detained Plaintiffs without consent and without authority of law.

47. O'LEARY violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and violated Plaintiffs' rights to be free from being unlawfully detained and charged with committing a crime without any basis in law or fact and by causing Plaintiffs to be imprisoned in connection with same.

48. O'LEARY knew or should have known and every reasonable deputy sheriff in his position would have concluded that Plaintiffs had constitutional rights not to have a deputy sheriff

search their vehicles, detain and arrest Plaintiffs for crimes they did not commit, unfounded in law or in fact, and subsequently incarcerate Plaintiffs in connection with same.

49. These violations were a type or character as to which any reasonable law enforcement officer would be aware, and further, the law prohibiting such conduct as unconstitutional is clearly established in Florida, in federal case law, including that of the Federal Court of Appeals of the United States, 11th Circuit, and under the case law of the U.S. Supreme Court.

50. The aforesaid acts of O'LEARY were performed knowingly, intentionally, and maliciously, and/or were performed in a reckless manner with callous and deliberate indifference to the health, safety and civil rights of Plaintiffs and for this reason Plaintiffs are entitled to an award of punitive damages.

51. As a direct and proximate result of the unlawful conduct of O'LEARY as aforesaid, Plaintiffs were deprived of their civil rights and forced to suffer great aggravation, humiliation, embarrassment, mental anguish and harm, loss of standing in the community and pecuniary losses including loss of income and loss of earning capacity.

### 42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFFS' CIVIL RIGHTS AGAINST SHERIFF SNYDER

52. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 34, inclusive, as if fully set forth herein.

53. At all times, SNYDER was responsible for MCSO, its agents and employees, including supervising, overseeing, training and establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida common law.

54. At all times material hereto, SNYDER was charged with the responsibility of adopting and implementing rules and procedures for the proper and efficient maintenance, supervision and control of the officers of the MCSO. These duties include, but are not limited to:

   a. To create, adopt and implement rules, regulations, practices and procedures, toward hiring and retaining law enforcement officers who do not have a propensity of searching citizens' vehicles without warrant or exigent circumstances, arresting and incarcerating citizens without cause, planting false evidence, fabricating charges and making false sworn statements of fact in support of their false arrest and incarceration;

   b. To create, adopt and implement rules and regulations, practices and procedures for proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure officers would be prevented from searching citizens' vehicles without warrant or exigent circumstances, arresting and incarcerating citizens without cause, planting false evidence, fabricating charges and making false sworn statements of fact in support of their false arrest and incarceration;

   c. To create, adopt and implement rules and regulations, practices and procedures for the proper and efficient supervision, control, discipline and assignment of law enforcement officers in a way and to an extent necessary to ensure that officers will not search citizens' vehicles without warrant or exigent circumstances, arresting and incarcerating citizens without cause, planting false evidence, fabricating charges and making false sworn statements of fact in support of their false arrest and incarceration; and

  d. To implement rules, regulation, policies, practices and procedures for the proper and efficient supervision, discipline and control of law enforcement officers to reduce or eliminate instances of untruthfulness and to properly punish those officers who commit same; and

  e. To implement rules, regulations, policies, practices and procedures necessary to properly and fully investigate claims by citizens that law enforcement officers searched citizens' vehicles without warrant or exigent circumstances, arresting and incarcerating citizens without cause, planting false evidence, fabricating charges and making false sworn statements of fact in support of their false arrest and incarceration.

55. SNYDER, with deliberate indifference, failed to adequately train or otherwise supervise and direct MCSO and its deputy sheriffs concerning the rights of the citizens they encounter in their duties, such that it is a policy, practice and custom for deputy sheriffs, including O'LEARY, to take extreme and reckless actions against the citizens they encounter, including all Plaintiffs.

56. SNYDER has directly participated in the inadequate training as he personally conducted a traffic stop and search without probable cause to justify the search.

57. Plaintiff LANDIS was stopped by SNYDER on June 14, 2018, this detention and search was conducted the presence of O'LEARY, further cementing MCSO and SNYDER's customs and practices as it relates to search and seizure rights of citizens.

58. Such action by SNYDER was taken by O'LEARY as tacit approval of the constitutional violations suffered by Plaintiffs and others.

59. In further disregard of the rights of citizens that MCSO and its deputy sheriffs encounter, SNYDER has, with deliberate indifference, either failed to direct, failed to otherwise fully require, or has sought to limit, MCSO and others in the proper investigation of the extreme and wanton acts of his deputy sheriffs, such that it is the policy, practice and custome of limiting investigations of deputy sheriffs with few or no serious questions raised as to deputy sheriff's actions or a deputy sheriff's claims as to citizens they encounter.

60. These actions by SNYDER amount to a purposeful failure of oversight in the actions of his deputies as it relates to making narcotics arrests.

61. By limiting and/or failing to investigate, resulting in findings of no violations of law, accepting deputy sheriff's word as gospel and otherwise adopting the justification for his deputy sheriff's extreme and wanton actions, SNYDER has ratified, condoned and consented to the deputy sheriff's unlawful conduct, including the ratification, condoning and consenting to the unlawful conduct of O'LEARY to Plaintiffs.

62. Had SNYDER not consciously engaged in the foregoing, keeping a blind eye to the actions of his deputy sheriffs, including O'LEARY, and properly investigated and punished (including terminating and bringing charges) against deputy sheriffs who violated the law and MCSO General Orders, the actions of O'LEARY as to Plaintiffs would not have taken place and the damages to Plaintiffs would not have occurred, thus obviating the need to bring this lawsuit.

63. The aforementioned actions in this case committed by O'LEARY were proximately caused by these policies, customs, and practices of SNYDER in failing to fulfill his duties as alleged in this Complaint.

64. Had O'LEARY known he was not free to lie on police reports and make false arrests because such conduct was regularly being investigated by SNYDER and his staff when

11

such instances came to their attention, he would not have engaged in his illegal and fraudulent conduct against Plaintiffs and the consequences and damages of same would not have inured to Plaintiffs.

65. The aforementioned policies, customs and practices of SNYDER and the actions of SNYDER were the cause of Plaintiffs being deprived of their civil rights, being forced to suffer great aggravation, humiliation, embarrassment, mental anguish and harm, loss of standing in the community and pecuniary losses including loss of income and loss of earning capacity.

66. The recklessness and deliberate indifference of SNYDER identified above was a further underlying cause of the constitutional torts committed by O'LEARY and was the proximate cause of Plaintiffs' injuries and damages.

## FALSE ARREST AND DETENTION – STATE LAW CLAIM AGAINST SHERIFF SNYDER

67. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 34, inclusive, as if fully set forth herein.

68. O'LEARY without process or authority of law, wrongfully, unlawfully, against the will of Plaintiffs and without probable cause, forcibly arrested and restrained Plaintiffs and compelled them to go to the Martin County Jail.

69. Plaintiffs, at the time they were arrested and imprisoned, were acting peaceably and in a lawful manner. No warrant for the arrest and imprisonment of any Plaintiff was ever issued.

70. The arrests were not objectively reasonable under the totality of the circumstances.

71. The aforesaid acts of O'LEARY were performed knowingly and intentionally.

72. By reason of the above, Plaintiffs were deprived of their liberty and have been caused great physical and mental suffering, humiliation, shame, public ridicule, and have been inconvenienced and suffered loss of standing in the community and resulting pecuniary losses.

Plaintiffs suffered special damages including past and future lost earnings and earning potential, incurred legal fees and investigation expenses necessitated solely by O'LEARY's actions.

73. As O'LEARY's employer, SNYDER was responsible for O'LEARY's acts and is liable to Plaintiffs for damages, including economic and non-economic pain and suffering, loss of capacity of life, mental suffering, shame, public ridicule, and have been inconvenienced and suffered loss of standing in the community and resulting pecuniary losses, including loss of income and loss of earning capacity.

WHEREFORE, Plaintiffs demand judgment against SNYDER for actual compensatory damages, pain, suffering and emotional distress and demand a jury trial of all issues so triable.

### Weston Landis

74. On September 23, 2018, at approximately 6 p.m., O'LEARY conducted a traffic stop of LANDIS' truck on Monterey Road in Stuart, for obstructing the roadway by traveling at a slow speed and having non-working tag lights. LANDIS was headed to dinner with his girlfriend who was a passenger in his truck. Upon being stopped, LANDIS fully cooperated with O'LEARY. (See Arrest Affidavit, attached hereto as Exhibit D)

75. O'LEARY ordered LANDIS and his passenger out of the vehicle.

76. O'LEARY had K-9 Deputy Albauer respond to the scene and walked the K-9 around the vehicle, who according to the arrest affidavit, alerted to the presence of narcotics.

77. On information and belief, the K-9 never alerted to any presence of narcotics.

78. Deputy Albauer did not complete any paperwork for his actions at the scene or those of his K-9.

79. O'LEARY conducted a search of LANDIS' truck without any probable cause, warrant or consent to search the truck.

80. O'LEARY claims he found two caps full of a white substance that he believed was heroin and field tested for fentanyl.

81. On information and belief, O'LEARY planted to the two caps inside LANDIS' vehicle.

82. O'LEARY arrested LANDIS for Possession of a Controlled Substance Fentanyl and Possession of Drug Paraphernalia.

83. LANDIS did not have drugs in his vehicle or on his person. LANDIS knew he was innocent.

84. On or about February 22, 2019, the Indian River Crime Laboratory tested the "evidence" planted and "found" by O'LEARY and the results showed "No controlled substances were identified."

85. LANDIS spent approximately 21 days in jail after he was arrested on a failure to appear for court for these false charges.

86. LANDIS suffered non-economic damages in the form of emotional pain and suffering as well as economic damages related to the false criminal charges.

### COUNT V – LANDIS- DEPRIVATION OF CIVIL RIGHTS AGAINST DEPUTY O'LEARY – FALSE ARREST AND IMPRISONMENT

87. LANDIS hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 35 through 42; and 74 through 86, inclusive, as if fully set forth herein.

WHEREFORE, LANDIS demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT VI- LANDIS- DEPRIVATION OF PLAINTIFFS' CIVIL RIGHTS AGAINST DEPUTY O'LEARY – FALSE ARREST AND IMPRISONMENT

88. LANDIS hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 43 through 51; and 74 through 86, inclusive, as if fully set forth herein.

WHEREFORE, LANDIS demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT VII- LANDIS- DEPRIVATION OF PLAINTIFFS' CIVIL RIGHTS AGAINST SHERIFF SNYDER

89. LANDIS hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 52 through 66; and 74 through 86, inclusive, as if fully set forth herein.

WHEREFORE, LANDIS demands judgment against SNYDER for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT VIII – LANDIS- FALSE ARREST AND DETENTION – STATE LAW CLAIM AGAINST SHERIFF SNYDER

90. LANDIS hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 67 through 73; and 74 through 86, inclusive, as if fully set forth herein.

WHEREFORE, LANDIS demands judgment against SNYDER for actual compensatory damages, pain, suffering and emotional distress and demand a jury trial of all issues so triable.

### Robin Page and Fabricio Vasquez

91. On October 14, 2018, PAGE and VASQUEZ were traveling to Wal-Mart when O'LEARY stopped them on US Highway 1 in Hobe Sound. PAGE was driving; VASQUEZ was a passenger in the vehicle. Upon being stopped, PAGE and VASQUEZ fully cooperated with O'LEARY. (See Arrest Affidavits, attached hereto as Exhibit E and F respectively)

92. O'LEARY claimed he stopped them for running a stop sign when they pulled out of their neighborhood onto US Highway 1.

93. O'LEARY ordered PAGE and VASQUEZ out of the vehicle and had Deputy Albauer and his K-9 unit respond and walk around the vehicle; claiming the K-9 alerted to the presence of narcotics.

94. Deputy Albauer did not complete any paperwork for his actions at the scene or those of his K-9.

95. O'LEARY conducted a search of PAGE's vehicle without any probable cause, warrant or consent to search the vehicle.

96. O'LEARY claims he found crack cocaine on the driver's side floorboard and methamphetamine on the passenger side floorboard of the vehicle.

97. O'LEARY claims the substances he found both field tested positive for cocaine and methamphetamine in the presence of Deputy Albauer.

98. O'LEARY then told PAGE he was going to be an informant for him or else he was going to jail.

99. O'LEARY arrested PAGE for Possession of a Controlled Substance Crack Cocaine.

100. O'LEARY arrested VASQUEZ for Possession of a Controlled Substance Crack Cocaine and Possession of Methamphetamine.

101. PAGE did not have any drugs in his vehicle or on his person.

102. VASQUEZ did not have any drugs in the vehicle or on his person.

103. On or about February 22, 2019, the Indian River Crime Laboratory tested the "evidence", which was "found" by O'LEARY and the results showed "No controlled substances were identified."

104. PAGE and VASQUEZ each spent one night in the Martin County Jail.

105. PAGE and VASQUEZ both worked and were full time students at Indian River State College studying to become architects. The fallout from their false arrests has caused stigma and inconvenience for them in the pursuit of their professional aspirations.

106. Both PAGE and VASQUEZ suffered non-economic damages in the form of emotional pain and suffering as well as economic damages related to the false criminal charges.

### COUNT IX – PAGE- DEPRIVATION OF CIVIL RIGHTS AGAINST DEPUTY O'LEARY – FALSE ARREST AND IMPRISONMENT

107. PAGE hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 35 through 42; and 91 through 106, inclusive, as if fully set forth herein.

WHEREFORE, PAGE demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT X- PAGE- DEPRIVATION OF PLAINTIFFS' CIVIL RIGHTS AGAINST DEPUTY O'LEARY – FALSE ARREST AND IMPRISONMENT

108. PAGE hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 43 through 51; and 91 through 106, inclusive, as if fully set forth herein.

WHEREFORE, PAGE demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT XI- PAGE- DEPRIVATION OF PLAINTIFFS' CIVIL RIGHTS AGAINST SHERIFF SNYDER

109. PAGE hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 52 through 66; and 91 through 106, inclusive, as if fully set forth herein.

WHEREFORE, PAGE demands judgment against SNYDER for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT XII – PAGE-FALSE ARREST AND DETENTION – STATE LAW CLAIM AGAINST SHERIFF SNYDER

110. PAGE hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 67 through 73; and 91 through 106, inclusive, as if fully set forth herein.

WHEREFORE, PAGE demands judgment against SNYDER for actual compensatory damages, pain, suffering and emotional distress and demand a jury trial of all issues so triable.

### COUNT XIII – VASQUEZ- DEPRIVATION OF CIVIL RIGHTS AGAINST DEPUTY O'LEARY – FALSE ARREST AND IMPRISONMENT

111. VASQUEZ hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 35 through 42; and 91 through 106, inclusive, as if fully set forth herein.

WHEREFORE, VASQUEZ demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT XIV- VASQUEZ- DEPRIVATION OF PLAINTIFFS' CIVIL RIGHTS AGAINST DEPUTY O'LEARY – FALSE ARREST AND IMPRISONMENT

112. VASQUEZ hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 43 through 51; and 91 through 106, inclusive, as if fully set forth herein.

WHEREFORE, VASQUEZ demands judgment against O'LEARY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT XV- VASQUEZ- DEPRIVATION OF PLAINTIFFS' CIVIL RIGHTS AGAINST SHERIFF SNYDER

113. VASQUEZ hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 52 through 66; and 91 through 106, inclusive, as if fully set forth herein.

WHEREFORE, VASQUEZ demands judgment against SNYDER for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT XVI – VASQUEZ- FALSE ARREST AND DETENTION – STATE LAW CLAIM AGAINST SHERIFF SNYDER

114. VASQUEZ hereby incorporates by reference the allegations contained in paragraphs 1 through 34; 67 through 73; and 91 through 106, inclusive, as if fully set forth herein.

WHEREFORE, VASQUEZ demands judgment against SNYDER for actual compensatory damages, pain, suffering and emotional distress and demand a jury trial of all issues so triable.

### JURY DEMAND

A demand for a jury trial is hereby made.

Dated: December 22, 2020.

> /s/ Todd Norbraten
> Todd Norbraten, Esq.
> Florida Bar No.: 56605
> Guy Bennett Rubin, Esq.
> Florida Bar No. 691305
> Rubin & Rubin
> PO Box 395, Stuart, Florida 34995
> Telephone: (772) 283-2004
> Facsimile: (772) 283-2009
> grubin@rubinandrubin.com

        tnorbraten@rubinandrubin.com
        dkrebs@rubinandrubin.com
        *Attorneys for Plaintiffs*