UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 20-14460-CIV-CANNON/McCabe

**ROBIN PAGE**, **FABRICIO VASQUEZ**,
and **WESTIN LANDIS**,

    Plaintiffs,

v.

**STEVEN O'LEARY** and
**SHERIFF WILLIAM D. SNYDER**,

    Defendants.
_____/

**ORDER ACCEPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION [ECF No. 99]**

**THIS CAUSE** comes before the Court upon Defendant Sheriff William D. Snyder's ("Defendant Sheriff") Motion for Summary Judgment (the "Motion") [ECF No. 67]. On November 2, 2022, Judge Ryon M. McCabe issued a report recommending that Defendant Sheriff's Motion be granted in part and denied in part (the "Report") [ECF No. 99]. Defendant Sheriff filed Objections to the Report [ECF No. 100]. The Court has reviewed the Report [ECF No. 99], Defendant Sheriff's Objections [ECF No. 100], and the full record.[1] For the reasons set forth below, the Report [ECF No. 99] is **ACCEPTED**.

---

[1] Plaintiffs neither filed objections to the Report nor responded to Defendant Sheriff's Objections, and the time to do so has expired [ECF No. 99 p. 22].

CASE NO. 20-14460-CIV-CANNON/McCabe

# FACTUAL BACKGROUND[2]

This case stems from Plaintiffs' arrests by Defendant Steven O'Leary ("O'Leary"), former deputy sheriff at the Martin County Sheriff's Office ("MCSO"), on two separate occasions in late 2018.[3]  As narrowed by the Report and Plaintiffs' non-objection, Plaintiffs pursue the following theory, in broad terms: O'Leary violated their federal and state civil rights by falsely arresting them using fabricated evidence, and Defendant Sheriff Snyder in his official capacity caused those violations by failing to train or otherwise supervise O'Leary.  The material facts viewed in the light most favorable to Plaintiffs as the non-moving party are as follows:

MCSO hired O'Leary as a deputy sheriff on February 1, 2018 [ECF No. 69 ¶ 9].  Prior to being hired by MCSO, O'Leary worked with the Marion County Sheriff's Office (June 13, 2016–May 22, 2017) and the Town of Palm Beach Police Department (May 30, 2017–January 26, 2018) [ECF No. 69 ¶¶ 3, 5, 6, 8].  In both positions, O'Leary made arrests for narcotics [ECF No. 69 ¶¶ 4, 7].  When O'Leary joined MCSO, he was assigned to a training unit before being placed in the Uniform Road Patrol Division after his training was completed [ECF No. 69 ¶¶ 10–12].  O'Leary worked the midnight shift for the Uniform Patrol Division and was supervised by Sergeant E. Brochu and Sergeant T. Baltes [ECF No. 69 ¶ 13].

On September 23, 2018, in the evening, O'Leary stopped Plaintiff Landis's truck on Monterey Road in Stuart for "obstructing the roadway by traveling at a slow speed and having non-working tag lights" [ECF No. 69 ¶ 15].  O'Leary had Landis and his passenger step out of the

---

[2] These facts are drawn from the parties' Joint Statement of Undisputed Facts [ECF No. 69], Defendant Sheriff's Statement of Material Facts [ECF No. 68], Plaintiffs' Statement of Material Facts [ECF No. 72], and supporting exhibits.  Wherever there is a factual dispute, the Court construes the record in the light most favorable to Plaintiffs.

[3] The Clerk of Court previously entered default against O'Leary for "failure to appear, answer, or otherwise plead to the complaint" within the time required by law [ECF No. 58].  Plaintiffs intend to move for entry of default judgment against O'Leary once Defendant Sheriff's liability has been resolved [ECF No. 61 p. 2].

2

car while Deputy Albauer walked a K-9 around the vehicle [ECF No. 69 ¶¶ 16–17]. O'Leary reported that the K-9 alerted to the presence of narcotics, prompting O'Leary to search the truck [ECF No. 69 ¶¶ 17–18]. During the search, O'Leary "claimed he found two caps full of a white substance that he believed was heroin and field tested for fentanyl," after which O'Leary arrested Landis for possession of a controlled substance and possession of drug paraphernalia [ECF No. 69 ¶¶ 19–20].

O'Leary similarly conducted a traffic stop of Plaintiffs Page and Vasquez on U.S. Highway 1 in Hobe Sound on October 14, 2018 [ECF No. 69 ¶ 22]. O'Leary said that he stopped them for running a stop sign and ordered them out of the car while Deputy Albauer and his K-9 circled the vehicle [ECF No. 69 ¶¶ 24–25]. When the K9 allegedly alerted to the presence of narcotics, O'Leary conducted a search of the vehicle, during which he claimed to have "found crack cocaine on the driver's side floorboard and methamphetamine on the passenger side floorboard" [ECF No. 69 ¶¶ 26–27]. After O'Leary claimed the substances tested positive for cocaine and methamphetamine through a field-testing kit, he arrested Page and Vasquez for possession of a controlled substance [ECF No. 69 ¶¶ 28–30].

On January 10, 2019, the State Attorney's office for the Nineteenth Judicial Circuit of Florida alerted MCSO that the Indian River Crime Lab reported three separate items of narcotics that failed to test positive for the listed controlled substances—all of which had been submitted by O'Leary [ECF No. 69 ¶¶ 32–33]. This information caused Sheriff's Major Robert Seaman to order an internal administrative review of O'Leary's pending drug cases [ECF No. 69 ¶ 34]. The next day, O'Leary was placed on administrative leave with pay; he was eventually terminated by MCSO on January 14, 2019 [ECF No. 69 ¶¶ 35–36].

The State Attorney's Office dropped all pending charges against Plaintiffs stemming from their arrests by O'Leary [ECF No. 69 ¶ 37]. When the Indian River Crime Laboratory tested the

substances submitted by O'Leary from Plaintiffs' arrests, the results showed no controlled substances [ECF No. 69 ¶¶ 38–39]. Of the 79 total drug-related arrests made by O'Leary during his time at MCSO, 15 of those arrests were determined upon testing not to involve controlled substances [ECF No. 69 ¶ 42].

O'Leary was charged by information with 18 counts of official misconduct; nine counts of false official statement; eight counts of tampering with evidence; 13 counts of false imprisonment; one count of second-degree petit theft; and one count of battery, several of which related to O'Leary's interactions with Plaintiffs [ECF No. 69 ¶¶ 46–47; *State of Florida v. Steven O'Leary*, Case No. 2019CF000872; ECF No. 10-3]. On December 2, 2021, O'Leary pled no contendere and was adjudicated guilty on all 50 counts [ECF No. 69 ¶ 48]. O'Leary's current release date is May 10, 2032 [ECF No. 69 ¶¶ 48–50].

## RELEVANT PROCEDURAL HISTORY

On February 17, 2021, Plaintiffs filed a twelve-count Amended Complaint ("FAC") [ECF No. 10]. As relevant here, the FAC asserts that Defendant Sheriff is (1) liable under 42 U.S.C. § 1983 in his official capacity because MCSO's "policies, customs, and practices" and its failure to adequately train/supervise O'Leary resulted in violations of Plaintiffs' federal civil rights [ECF No. 10 ¶¶ 65–79 (Landis), 120–34 (Page), 159–73 (Vasquez)] (Counts III, VII, and XI); and (2) Defendant Sheriff, as O'Leary's employer, "is responsible for O'Leary's acts" and is liable for Plaintiffs' false arrest and imprisonment under Florida state law [ECF No. 10 ¶¶ 80–86 (Landis), 135–41 (Page), 174–80 (Vasquez)] (Counts IV, VIII, and XII). Plaintiffs seek punitive damages on their Section 1983 claims [ECF No. 10 pp. 14, 23, 31].

On June 22, 2022, Defendant Sheriff moved for summary judgment on all counts against him (Counts III, IV, VII, VIII, XI, XII) [ECF No. 67]. The Court referred the Motion to Magistrate

Judge McCabe for a Report and Recommendation [ECF No. 88]. The Report is ripe for adjudication [ECF Nos. 99, 100].

## LEGAL STANDARD

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

The Report recommends that the Court grant Defendant Sheriff's Motion for Summary Judgment in part and allow only the Section 1983 claims to proceed to trial insofar as they are brought under a "failure to train or supervise" theory of liability [ECF No. 99 p. 21]. With regard to the state law claims asserted by Plaintiffs, the Report recommends granting Defendant Sheriff's Motion because the undisputed evidence is "such that no reasonable jury could reach any conclusion except that [O'Leary] committed his offenses against Plaintiff 'in bad faith,'" and as such, Defendant Sheriff is entitled to sovereign immunity under Fla. Stat. § 768.28(9)(a) [ECF No. 99 pp. 18–20]. The Report also recommends that the Court grant the Motion with regard to Plaintiffs' requests for punitive damages on their Section 1983 claims because the law does not

permit recovery of punitive damages in Section 1983 actions against a municipal entity [ECF No. 99 pp. 20–21].[4]

On the merits of Plaintiffs' Section 1983 claims against Defendant Sheriff, the Report recommends that the Court grant summary judgment in favor of Defendant Sheriff to the extent Plaintiffs are seeking to recover under a "custom or practice" theory of recovery [ECF No. 99 pp. 8–9]. Specifically, the Report determines, based on the undisputed facts, that Defendant Sheriff's "employees did not engage in a widespread pattern of making arrests without probable cause, fabricating evidence, or making false statements in police records," and thus, that no genuine dispute of material fact exists to warrant a trial on Plaintiffs' "custom or practice" theory of recovery [ECF No. 99 p. 8]. However, the Report finds a triable issue precluding summary judgment on Plaintiffs' "failure to train or supervise" theory of liability under Section 1983 [ECF No. 99 pp. 10–17]. In particular, the Report finds a genuine fact issue as to whether Defendant Sheriff had notice of O'Leary's wrongdoing, citing abnormalities in evidence seized by O'Leary, specified failures in policy related to such seized evidence, and knowledge by MCSO supervisors about O'Leary's unusually high number of narcotic arrests [ECF No. 99 pp. 11–16]. The Report concludes that "a reasonable jury could conclude that [Deputy Sheriff's failure to train and/or supervise O'Leary] caused the constitutional violations committed against the Plaintiffs" [ECF No. 99 p. 17]. As such, the Report recommends that the Court deny summary judgment to Defendant Sheriff on the Section 1983 claims and allow Plaintiffs to proceed to trial on their "failure to train or supervise" theory of liability [ECF No. 99 p. 21].

Defendant Sheriff's objection is limited to the Report's determination that a genuine issue of material fact exists on Plaintiffs' "failure to train or supervise" theory of liability under Section 1983 [ECF No. 100 p. 1]. According to Defendant Sheriff, the Report "seemingly analyzes the

---

[4] As noted by the Report, Plaintiffs conceded this point at oral argument [ECF No. 99 pp. 20–21]

issues of 'notice' and 'causation' in a vacuum without considering all of the elements Plaintiffs must meet to support such a claim" [ECF No. 100 p. 3].  Defendant Sheriff also takes issue with the Report's consideration of abnormalities in the evidence submitted by O'Leary to establish a genuine dispute of material fact, arguing that such abnormalities put Defendant Sheriff on notice only that O'Leary was violating department policy—not that he was violating citizens' constitutional rights [ECF No. 100 pp. 5–6].  Defendant Sheriff further argues that (1) there is a lack of evidence showing that Defendant Sheriff was aware of O'Leary's constitutional violations and then "deliberately [chose] not to train or supervise his deputies in response" [ECF No. 100 p. 7]; and (2) Plaintiffs have not shown that Defendant Sheriff's failure to train or supervise was the cause of Plaintiffs' civil rights violations [ECF No. 100 p. 8].[5]

Defendant Sheriff's objections are not persuasive in light of the Report's careful consideration of the record evidence, the ample evidence submitted by the parties on the Motion, and the summary judgment standard itself.  Defendant Sheriff criticizes the Report for relying on the evidentiary abnormalities (and associated policy failures) to establish a genuine dispute of material fact on the notice element—but the Report properly considered that evidence in combination with the MCSO supervisors' knowledge of O'Leary's unusually high number of drug-related arrests [ECF No. 99 p. 12 ("In the Court's view, neither category of evidence would be sufficient to create a jury issue on its own in this case, but in combination they suffice.")].  The Court agrees.  The record evidence, as analyzed by the Report, shows not only that MCSO supervisors were aware that O'Leary had an unusually high number of narcotics arrests, but also that the supervisors repeatedly signed off on O'Leary's evidence collections despite clear abnormalities, including evidence that did not match the description provided by O'Leary

---

[5] Plaintiffs did not file a response to Defendant Sheriff's Objections and the time to do so has expired.  *See* Fed. R. Civ. P. 72(b)(2).

[ECF No. 99 pp. 12–16].  Taken as a whole, the Court agrees with the Report that the record evidence establishes a genuine dispute of material fact as to whether Defendant Sheriff was on notice of O'Leary's constitutional violations prior to Plaintiffs' arrests [ECF No. 99 p. 16].  Nor does the Court agree with Defendant Sheriff's suggestion that the Report considered the elements of notice and causation "in a vacuum" [ECF No. 100 p. 3].  The Report considered the appropriate legal standards; properly found a genuine factual dispute as to whether Defendant Sheriff had notice of O'Leary's constitutional violations before Plaintiffs' arrests; and also determined correctly that a reasonable jury could conclude that Defendant Sheriff's failure to train or supervise O'Leary caused the constitutional violations committed against Plaintiffs [ECF No. 99 p. 17]. Though Defendant Sheriff objects that the burden on Plaintiffs is high under a "failure to train or supervise" theory of liability [ECF No. 100 p. 2], the Report recognized that rigorous causation standard and applied it properly in the context of summary judgment [ECF No. 99 p. 10 (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)].  In sum, having considered Defendant Sheriff's objections, the Court agrees with the Report on this record that a genuine dispute of material fact precludes summary judgment on Plaintiffs' "failure to train or supervise" theory of liability.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 99] is **ACCEPTED**.
2. Defendant Sheriff William D. Snyder's Motion for Summary Judgment [ECF No. 67] is **GRANTED IN PART AND DENIED IN PART** as follows:
    a. Defendant Sheriff's Motion for Summary Judgment is **GRANTED** as to Counts III, VII, and XI to the extent that Plaintiffs pursue claims under an "official policy" or "custom or practice" theory.

    b. Defendant Sheriff's Motion for Summary Judgment is **DENIED** as to Counts III, VII, and XI to the extent that Plaintiffs pursue claims under a "failure to train or supervise" theory. Plaintiffs may proceed to trial on Counts III, VII, and XI under a "failure to train or supervise" theory.

    c. Defendant Sheriff's Motion for Summary Judgment is **GRANTED** as to Counts IV, VIII, and XII.

    d. Defendant Sheriff's Motion for Summary Judgment is **GRANTED** as to Plaintiffs' request for punitive damages.

3. The stay on pre-trial deadlines [ECF No. 104] is hereby **LIFTED**.

4. On or before **January 31, 2023**, the parties shall file an updated scheduling report. Defendant Snyder shall include in that report its position on the pending *Daubert* motion [ECF No. 70], which appears to be moot in light of this Order.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 17th day of January 2023.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record