UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FT. PIERCE DIVISION)

ROBIN PAGE, FABRICIO VASQUEZ and WESTIN LANDIS,

CASE NO.: 2:20-cv-14460-AMC

Plaintiffs,

v.

DEPUTY SHERIFF STEVEN O'LEARY, in his individual capacity, and SHERIFF WILLIAM D. SNYDER, in his official capacity,

Defendants.
_________________________________/

**DEFENDANT SHERIFF'S MOTION FOR RECONSIDERATION (AND MEMORANDUM OF LAW)**

The Defendant SHERIFF, through the undersigned attorneys, respectfully moves this Court for reconsideration of its Order Accepting Magistrate Judge's Report And Recommendation (ECF No. 105) as to the ruling on his Motion for Summary Judgment as to Counts III, VII, and XI on the section 1983 *Monell* – failure to train/supervise theory (and Memorandum of Law) and would state as follows:

1. This matter arises out of two traffic stops by former Deputy Steven O'Leary: one on September 23, 2018 involving Plaintiff Weston Landis and a second traffic stop on October 14, 2018 that involved Plaintiffs Robin Page and Fabricio Vasquez. All three Plaintiffs claim that they were falsely arrested by former Deputy O'Leary. (*See* ECF No. 10, ¶¶35, 87).

2. This civil matter is proceeding upon the Plaintiffs' Amended Complaint, (ECF No. 10). Earlier this year the Court entered an Order granting in part and denying in part the Defendant Sheriff's Motion for Summary Judgment which finds that the Defendant Sheriff is entitled to sovereign immunity in regard to Plaintiffs' state law claims of False Arrest and False

Imprisonment against him (Counts IV, VIII and XII) but that Plaintiffs' *Monell*[1] claims brought pursuant to 42 U.S.C. §1983 against the Defendant Sheriff in his official capacity (Counts III, VII and XI) should be permitted to proceed to trial under a theory of a failure to train or supervise (See ECF No. 105). It is apparent from various pretrial filings that Plaintiffs are now proceeding under only a failure to supervise theory[2]. This case is currently set for the Court's two-week trial calendar beginning on September 11, 2023. (ECF No. 107).

3. The Magistrate Judge's Report which was subsequently adopted by this Honorable Court, found on the "failure to train or supervise" theory—which under the law has the most stringent proof requirement of all such theories of governmental liability under §1983-- that there are genuine issues of material fact as to notice and causation which require resolution by a jury. (*See* ECF No. 99, pgs. 16 and 17; *see also* ECF No. 105). The Report further stated at pg. 12:

> The Court nevertheless finds that Plaintiffs have proffered sufficient evidence to create a genuine issue of fact as to notice. In particular, Defendants have proffered two categories of evidence that, in combination, give rise to a jury issue: (1) supervisory knowledge of the unusually high number of narcotics arrests made by Deputy, and (2) abnormalities with evidence seized by Deputy prior to Plaintiffs' arrests. *In the Court's view, neither category of evidence would be sufficient to create a jury issue on its own in this case, but in combination they suffice.* (emphasis added).

As noted by the Court at ECF No. 105, pg. 6:

> the Report finds a genuine fact issue as to whether Defendant Sheriff had notice of O'Leary's wrongdoing, citing abnormalities in evidence seized by O'Leary, specified failures in policy related to such seized evidence, and knowledge by MCSO supervisors about O'Leary's unusually high number of narcotic arrests

---

[1] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

[2] See Joint Pretrial Stipulation at ECF No. 129, pg. 2 – "Plaintiffs' allege their constitutional rights were violated because of Sheriff Snyder's office failing to supervise his deputies."; Jointly filed Jury Instructions at ECF No. 125-1, pg. 28 "Plaintiffs Page, Landis, and Vasquez claim that Sheriff Snyder is liable for failing to adequately supervise Deputy Steven O'Leary…."; and Plaintiffs' proposed verdict form at ECF No. 125-3: first question: "Did the Martin County Sheriff's Office fail to supervise Deputy Steven O'Leary causing a constitutional violation of the rights of the Plaintiffs?"

[ECF No. 99 pp. 11–16]. The Report concludes that "a reasonable jury could conclude that [Deputy Sheriff's failure to train and/or supervise O'Leary] caused the constitutional violations committed against the Plaintiffs" [ECF No. 99 p. 17]. As such, the Report recommends that the Court deny summary judgment to Defendant Sheriff on the Section 1983 claims and allow Plaintiffs to proceed to trial on their "failure to train or supervise" theory of liability [ECF No. 99 p. 21].

4. The power to change an interlocutory ruling is within the sound discretion of the Court in the interest of furthering the administration of justice. In this instance, this case as well as the *Bradley Martin, et al* case involves the criminal actions of former Martin County Sheriff's deputy Steven O'Leary who is now serving a multi-year prison sentence due to his conviction of a multitude of crimes including Official Misconduct, False Official Statement, Tampering With Evidence, and False Imprisonment and which included his interactions with the Plaintiffs. It logically makes sense for the Court to step back and consider all the evidence that pertains to this matter, particularly when doing so may very well properly limit the issues that are presented to a jury when further reflection, in light of additional evidence, makes it clear that no triable issue of fact remains.

5. Ironically, with the benefit of hindsight, when the case of *Bradley Martin, et al. v. Snyder, et al.,* Case No. 2:21-cv-14469-AMC came before this Court on a motion for summary judgment, the undersigned specifically reviewed the evidence in light of the notice and causation issues which the Court focused on in the present case. In doing so, additional information was gleaned concerning the initial investigation conducted by MCSO immediately after the State Attorney's Office notified them that the lab results from three drug cases had come back negative. As a result of additional information which crystallizes when the purported evidence abnormalities would have been arguably "obvious"--in November of 2018—which ***post-dates*** the Plaintiffs' arrests in this case, it cannot be said that there is a triable issue for the jury in the present case given

the dates of Landis's arrest (September 23, 2018) and Page and Vasquez's arrests (October 14, 2018).

WHEREFORE, the Defendant Sheriff would respectfully submit that in the interest of furthering the administration of justice this Honorable Court should reconsider its earlier ruling (at ECF No. 105) and grant Defendant Sheriff's Motion for Summary Judgment as to the §1983 *Monell* failure to train/supervise theory.

FURTHER, in support of this Motion, this Defendant would refer this Honorable Court to the Memorandum of Law incorporated herein and by reference made a part hereof.

**MEMORANDUM OF LAW**

Because the *Monell* summary judgment order was interlocutory in nature, this Court has the discretion to revisit it at any time before the entry of final judgment. *See e.g.*, *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1231 (11th Cir. 2010). In reconsidering, and then reversing, an order of dismissal, United States District Judge Kenneth Marra wrote:

> The power to change an interlocutory ruling is within the sound discretion of a trial judge conducting his court in the interest of furthering the administration of justice. "[T]he trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Sweeney v. Alabama Alcoholic Beverage Control Bd.*, 117 F.Supp.2d 1266, 1268 (M.D.Ala.2000) (quoting *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir.1990)); *see also Bon Air Hotel, Inc. v. Time*, 426 F.2d 858, 862 (5th Cir.1970) (holding that, because a summary judgment "order was interlocutory, 'the court at any time before final decree (could) modify or rescind it'") (*quoting John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922)).

*Court-Appointed Receiver for Lancer Mgmt. Grp., LLC v. Redwood Fin. Grp., Inc.,* 2010 WL 2822053, at *1 (S.D. Fla. 2010).

As this Court recently acknowledged in its Order denying Motions to Consolidate Cases (at ECF No. 124, pg. 4), the date of each Plaintiff's arrest is important, particularly as to Plaintiffs'

section 1983 *Monell* claim and when it arguably may be determined that the Sheriff as final policy maker had (or should have had) notice of any of O'Leary's prior unconstitutional conduct such that it could be said that there was wrongdoing on the part of the agency, rather than merely on the part of the deputy or his immediate supervisors, who are not final policy makers.[3] The timeline of events involving former deputy O'Leary and each of his arrests and evidence submissions and where each of the individual plaintiffs' arrests fall within that timeline directly impacts the answer to the question of whether there is a triable issue of fact for a jury as to any of the plaintiffs' Monell claims. It is not a one size fits all answer.

Prior to the SAO's notification in January of 2019, there were no formal or informal complaints of misconduct against O'Leary made by other arrestees, by the crime lab, or by the State Attorney's Office, that would have called into question O'Leary's truthfulness regarding his sworn probable cause affidavits/incident reports or physical evidence submitted in his arrests.

"Abnormalities" With The Evidence

In the Magistrate Judge's Report, it was noted:

> Given that a visual inspection of evidence on January 11, 2019, immediately led Deputy's supervisors to conclude that "something was wrong with the evidence," the Court finds it reasonable to conclude an earlier inspection of Deputy's evidence might have led to the same immediate conclusion. This, in combination with the other evidence set forth above, leads the Court to conclude that a genuine issue of fact

---

[3] As noted by the Magistrate Judge's Report which was adopted by this Honorable Court: "…the Supreme Court recognizes "limited circumstances" under which "failure to train" can give rise to section 1983 liability. *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Specifically, inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. To show "'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and that the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The Eleventh Circuit has repeatedly held that, without notice of a need to train or supervise in a particular area, a municipality cannot be liable as a matter of law under a *Monell* failure to train/supervise theory. *Id.*; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-08 (1997)…" (ECF No. 99, pg. 10).

> remains as to whether Defendant was on notice of at least one earlier instance of unconstitutional conduct materially similar to Deputy's violations of Plaintiffs' constitutional rights. (ECF No. 99, pg. 16).

In regard to the physical evidence that O'Leary was submitting, it was only <u>after</u> three of O'Leary's drug submissions came back from the lab as negative[4] that it became apparent during a subsequent MCSO investigation led by then-Detective (now sergeant) Diapoules in January 2019 that some of the evidence O'Leary was submitting was not what he claimed it was. Detective Diapoules noted that during the Initial Administrative Review, which occurred on or about January 11, 2019, Sgt. Karl Nelson randomly selected ten items of evidence submitted by Steven O'Leary with agency case numbers 18-20275 (**November** 14, 2018 Sutton arrest), 18-19437 (**November** 1, 2018 Schweitzer arrest), 18-20062 (**November** 10, 2018 Cook arrest), 18-20744 (**November** 23, 2018 Gomez and Perez arrests) and 18-20594 (**November** 19, 2018 Meinhold arrest) to perform presumptive field testing. At that time, to the extent any irregularities were seen in looking at the evidence in those cases—all of that evidence involved arrests O'Leary conducted in **November of 2018**. (ECF No. 66-1, pg. 2). (*See* Exhibit "A" – affidavit of Sergeant Diapoules previously filed in the *Bradley Martin, et al v. Snyder*, et al, ⁋5). Therefore, even under the Court's analysis, the evidence submitted by O'Leary with the "obvious" irregularities seen (with hindsight) **post-dates** the Plaintiffs' September and October arrests such that it would not and could not have put the Sheriff on actual or constructive notice prior to Plaintiffs Landis, Page and Vasquez's arrests of a need to provide additional supervision

---

[4] Sgt. Diapoules testified in deposition that the first three drug submissions to come back from the lab with negative test results were for the cases of Bradley Martin, Jabari Schweitzer and James Sutton. (ECF No. 72-5, Diapoules depo. pg. 97 of 158/lines 13-23). All three of these individuals were arrested after the Plaintiffs in this case. Bradley Martin's arrest was on October 20, 2018, Jabari Schweitzer's arrest was on November 1, 2018 and James Sutton's arrest was on November 14, 2018). (*See* Exhibit "A" – affidavit of Sergeant Diapoules previously filed in the *Bradley Martin, et al v. Snyder, et al*, ⁋⁋ 5 & 6).

to O'Leary. As a result, it cannot be said that there is a triable issue for the jury in the present case on the *Monell* claim under the failure to train/supervise theory.

Viewing O'Leary's evidence submissions with the benefit of hindsight, during his criminal investigation, when Detective Diapoules reviewed the evidence O'Leary submitted chronologically, he found that in several cases O'Leary claimed he put photographs in evidence when he actually did not do so. (*See* ECF No. 72, ¶¶ 65, 69-72, 79). However, there was no Sheriff's office policy that required supervisors to confirm that photographs were put into evidence. Therefore, in real time, if no supervisor checked for O'Leary's photo submissions, there was no policy failure as there was no such requirement to do so.[5]

In looking at the evidence submitted by O'Leary before Plaintiffs Landis, Page and Vasquez's arrests, it is important to keep in mind the nature of the evidence "abnormality." As noted above, unlike the physical drug evidence, supervisors were not required to review or sign off on other mundane types of evidence such as photographs. As a result, in real time there would have been no reason for O'Leary's sergeants to discover that O'Leary failed to submit photographic evidence related to the drug arrests he made on May 3, May 28, August 11, August 27, August 29, September 8, September 13, or October 3, 2018, as referenced in the Magistrate Judge's Report at ECF No. 99, pgs. 13-15.[6]

---

[5] To the extent Plaintiffs claim that because supervisors were suspicious of O'Leary's high number of narcotics arrests they should have pulled the photos he claimed he put into evidence, such a contention makes no sense without the benefit of hindsight given the fact that oftentimes O'Leary claimed he put photos into evidence of windshields and open containers of alcohol, not the narcotics he seized. Furthermore, since his supervisors would have already signed off on his drug submissions or would have assumed (correctly) that another supervisor had signed off on his drug submissions, there was no reason for them to double check whether he had put *photos* of the drugs he put into evidence as he claimed he did.

[6] These arrests were of the following individuals: Devenand Sharma (May 3), David Knapp (May 28), Joshua Patterson (August 11), Keith Waters (August 27), Charles Cedeno (August 29),

Additionally, regarding O'Leary's evidence submissions on May 28, 2018 related to his arrest of David Knapp, on that date, Mr. Knapp was arrested for possession of cocaine, obstruction/resisting without violence and possession of drug paraphernalia. (ECF No. 10-2, pg. 24). O'Leary submitted into evidence a pipe with residue, a clear bag with what he described as cocaine residue, and a black straw. (ECF No. 10-2, pg. 25). O'Leary's arrest/incident report reflects that while on scene he field tested both the cannabis and a small white rock like substance and that both came back with a positive result. (ECF No. 10-2, pgs. 24-25). The record evidence shows O'Leary put into evidence a clear bag with "cocaine residue." As O'Leary had claimed to have field tested the substance prior to its submission, it would not have been an obvious abnormality to the supervisor who signed off on it. Nor would the fact that the black straw was chewed on as it would have been reasonable in real time for a supervisor to assume that it had been used to ingest cocaine and then subsequently chewed on by the user. Either way such evidence would not have been obviously irregular at the time of its submission in late May of 2018, particularly since as of that time, O'Leary had made very few drug arrests[7]. Therefore, in real time, his supervisors would not have had reason to believe he was making an unusually high number of narcotics arrests. Further, there is no record evidence that Mr. Knapp made any complaints to MCSO regarding his arrest which would have alerted MCSO to a potential problem involving this arrest.

Likewise O'Leary's evidence submissions on August 7, 2018 would not have been seen as abnormal upon a supervisor's review in real time. On August 7th, O'Leary arrested Grayson Kyte who was charged with Tampering with Evidence and Possession of Cannabis less than 20 grams

Dwight Williams (September 8), Samuel Palmeri (September 13), and Joseph Sanders (October 3).

[7] O'Leary's narcotics related arrests in early 2018: **March** (2 Felony); **April** (1 Felony, 1 Misdemeanor, 1 Notice to Appear); and **May** (1 Felony, 4 Misdemeanor). (ECF 10-2, pg. 22).

(ECF No. 10-2, pg. 25). Although O'Leary documented that upon searching Kyte's vehicle he located a small amount of marijuana rolled into a small "joint" inside of a beer can, O'Leary described what he placed into evidence as an "open Michelob Ultra can with loose marijuana inside 0.03 grams"—not a rolled joint. (ECF No. 10-2, pg. 26; ECF No. 72-5, pg. 54/lines 4-18). Furthermore, since O'Leary had claimed to have field tested the marijuana prior to its submission, again such would not have been an obvious abnormality to the supervisor who signed off on it[8]. Also, as of early August of 2018, O'Leary had still not made very many drug arrests (four in June and only one in July) (see ECF 10-2, pg. 22). Therefore, in real time, his supervisors would not have had reason to believe he was making an unusually high number of narcotics arrests. Finally, as with all the other O'Leary drug arrests, there is no record evidence that Mr. Kyte made any complaints to MCSO which would have alerted the Sheriff's office to a potential problem involving this arrest sooner.

With this pertinent information in mind, it cannot be said that the "abnormalities" in the evidence prior to the Plaintiffs Landis, Page or Vasquez's arrest (as specifically referenced by the Magistrate Judge's Report at ECF No. 99, pgs. 13-15) would have or could have put the Sheriff on notice, either actually or constructively. The following chart further illustrates this point with the photographic evidence references in bold:

[8] This is particularly true as the Indian River Crime lab also noted that a paper towel was included in the submission. (ECF No. 10-2, pg. 26).

| Date of Arrest | Name of Arrestee | Issue with Evidence |
|---|---|---|
| **May 3, 2018** | **Devenand Sharma** | **No photos of open containers turned in** |
| **May 28, 2018** | **David Knapp** | Black straw was chewed on; **no photos of small amount of white rock like substance or straw turned in** |
| August 7, 2018 | Grayson Kyte | Beer can with some plant matter inside submitted but no "rolled joint" |
| **August 11, 2018** | **Joshua Patterson** | **No photos of alleged illegal tint turned in** |
| **August 27, 2018** | **Keith Waters** | **No photos of open containers turned in** |
| **August 29, 2018** | **Charles Cedeno** | **No photos of non-working tag lights turned in** |
| **September 8, 2018** | **Dwight Williams** | O'Leary said there was 108 grams of cannabis but were only 62.19 grams[9]; **No photos of marijuana on scale turned in** |
| **September 13, 2018** | **Samuel Palmeri** | **Photos of dark window tint no turned in** |
| **October 3, 2018** | **Joseph Sanders** | **No photos of white rock like substance on scale turned in** |

Moreover, regardless of the "abnormalities" of the evidence, in real time there were *no complaints* about then-deputy O'Leary received by the Sheriff's office until January of 2019--*after* all of the Plaintiffs arrests had already occurred. (ECF No. 72-4, pg. 11/lines 4-13). Absent prior notice, it cannot be said that the Sheriff was deliberately indifferent by failing to take action until January 2019. If after January of 2019 the Sheriff had allowed O'Leary to continue to work as a

[9] Sgt. Diapoules testified that he **would not** be able to easily distinguish between 108 grams and 62.10 grams of a substance. (ECF No. 72-5, pg. 58/line 20 – pg. 59/line 1).

deputy sheriff and done nothing, that would be a different matter. But that is not what happened here.

Furthermore, the fact that supervisors could have discovered the misconduct sooner is insufficient to establish municipal liability under *Monell*, *see McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004), as is the mere failure of the Sheriff's Office to follow its own policies and procedures, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) ("It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983.") (emphasis added). A mere opportunity to violate rights does not support the necessary causal inference. *See Bd. of County Comm'rs*, 520 U.S. at 410-11 (stating the fact that inadequate adherence to policy might "make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure . . . produced a specific constitutional violation").

The motion should be granted.

**RULE 7.1 STATEMENT**

Pursuant to Local Rule 7.1(a)(3)(A), undersigned counsel hereby certifies that she conferred with Plaintiff's Counsel, Guy Rubin, who advised that the Plaintiffs oppose the relief sought herein.

Respectfully submitted,

***s/ Summer M. Barranco***
SUMMER M. BARRANCO, ESQUIRE
Fla. Bar No. 984663

**I HEREBY CERTIFY** that a copy of the foregoing was e-filed with the Clerk of Court via the CM/ECF system which sends an electronic copy to: GUY BENNETT RUBIN, ESQUIRE, Rubin & Rubin, 2055 S. Kanner Highway, Stuart, Florida 34994(grubin@rubinandrubin.com and dkrebs@rubinandrubin.com) this 15th day of August, 2023.

PURDY, JOLLY, GIUFFREDA, BARRANCO
& JISA P.A.
2455 East Sunrise Boulevard, Suite 1216
Fort Lauderdale, Florida 33304
Telephone (954) 462-3200
Telecopier (954) 462-3861
E-mail: summer@purdylaw.com; isabella@purdylaw.com
Attorneys for Defendant *Sheriff*

BY: ***s/ Summer M. Barranco***
SUMMER M. BARRANCO, ESQUIRE
Fla. Bar No. 984663