Case 2:20-cv-14460-AMC   Document 129   Entered on FLSD Docket 08/04/2023   Page 1 of 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14460-CIV-CANNON/Maynard

ROBIN PAGE, FABRICIO VASQUEZ,
WESTON LANDIS,

        Plaintiffs,

v.

DEPUTY SHERIFF STEVEN O'LEARY, in
his individual capacity, and
SHERIFF WILLIAM D. SNYDER, in his
official capacity,

        Defendants.

_____

### JOINT PRETRIAL STIPULATION[1]

Plaintiffs, ROBIN PAGE, FABRICIO VASQUEZ, WESTON LANDIS, and Defendant, SHERIFF WILLIAM D. SNYDER, in his official capacity, (collectively, the "Parties") submit their Joint Pretrial Stipulation, pursuant to Rule 16.1(e) of the Local Rules of the United States District Court for the Southern District of Florida, and this Court's Order Resetting Trial Deadlines [DE 107].

**1. SHORT CONCISE STATEMENT OF THE CASE BY EACH PARTY**

    **Plaintiffs:**

This is an action against Sheriff William D. Snyder and one of his then deputies at the Martin County Sheriff's Office, Steven O'Leary. At issue is one claim brought by the Plaintiff,

---

[1] The Clerk entered a Default against Defendant Steven O'Leary on April 18, 2022 [DE 58].

Case 2:20-cv-14460-AMC   Document 129   Entered on FLSD Docket 08/04/2023   Page 2 of 16

against Defendant Sheriff for Deprivation of Plaintiff's Civil Rights. Plaintiff alleges his constitutional rights were violated because of Sheriff Snyder's office failing to supervise his deputies.

~~On June 14, 2018, Defendant Sheriff Snyder conducted an unlawful search and seizure of Plaintiff Landis in the presence of O'Leary and other deputies. This direct action by the Sheriff amounts to approval and training of unlawful searches and seizures for narcotics during traffic stops. With that approval to rely on, O'Leary took his actions a step further by misrepresenting evidence and falsely arresting numerous individuals, including the Plaintiffs.~~

On September 23, 2018, at approximately 6 p.m., O'Leary conducted a traffic stop of Landis' truck on Monterey Road in Stuart for obstructing the roadway by traveling at a slow speed and having non-working tag lights. Landis was headed to dinner with his girlfriend, a passenger in his truck. Upon being stopped, Landis fully cooperated with O'Leary.

O'Leary ordered Landis and his passenger out of the vehicle. O'Leary had K-9 Deputy Albauer respond to the scene, who walked the K-9 around the vehicle and, according to the arrest affidavit, alerted to the presence of narcotics. However, on information and belief, the K-9 never alerted to any presence of narcotics. Deputy Albauer did not complete any paperwork for his actions at the scene or those of his K-9.

O'Leary searched Landis' truck without any probable cause, warrant, or consent to search the truck. He claims he found two caps full of a white substance he believed was heroin and field tested for fentanyl. Landis claims O'Leary planted the two caps inside Landis' vehicle.

O'Leary arrested Landis for Possession of a Controlled Substance: Fentanyl and Possession of Drug Paraphernalia. Yet, Landis did not have any drugs in his vehicle or on his person. Landis knew he was innocent; later laboratory results would verify this.

Months later, on or about February 22, 2019, the Indian River Crime Laboratory tested the "evidence" planted and "found" by O'Leary during the Landis stop and the results showed "No controlled substances were identified."

Landis spent approximately 21 days in jail after he was arrested for a failure to appear for court for these false charges. He has suffered non-economic damages in the form of emotional pain and suffering and economic damages related to the false criminal charges.

~~On October 14, 2018, Page and Vasquez were traveling to Wal-Mart when O'Leary stopped them on US Highway 1 in Hobe Sound. Page was driving; Vasquez was a passenger in the vehicle. Upon being stopped, Page and Vasquez fully cooperated with O'Leary.~~

~~O'Leary claimed he stopped them for running a stop sign when they pulled out of their neighborhood onto US Highway 1. O'Leary ordered Page and Vasquez out of the vehicle and had Deputy Albauer and his K-9 unit respond and walk around the vehicle, claiming the K-9 alerted to the presence of narcotics. Deputy Albauer did not complete any paperwork for his actions at the scene or those of his K-9.~~

~~O'Leary conducted a search of Page's vehicle without any probable cause, warrant, or consent to search the vehicle. O'Leary claimed he found crack cocaine on the driver's side floorboard and methamphetamine on the passenger side floorboard of the vehicle. He also claimed the substances he found both field-tested positive for cocaine and methamphetamine in the presence of Deputy Albauer.~~

~~O'Leary then told Page he was going to be an informant for him or else he was going to jail. O'Leary arrested Page for Possession of a Controlled Substance Crack Cocaine and arrested Vasquez for Possession of a Controlled Substance Crack Cocaine and Possession of Methamphetamine.~~

~~Page and Vasquez had no drugs in the vehicle or their persons. Months later, on or about February 22, 2019, the Indian River Crime Laboratory tested the "evidence," O'Leary claimed was "found" during the Page and Vasquez stop; the results showed "No controlled substances were identified."~~

~~Page and Vasquez each spent one night in the Martin County Jail. Both worked and were full-time students at Indian River State College studying to become architects. The fallout from their false arrests has caused stigma and inconvenience for them in the pursuit of their professional aspirations.~~

~~Both Page and Vasquez suffered non-economic damages in the form of emotional pain and suffering and economic damages related to the false criminal charges.~~

During the timeframe of the arrests, O'Leary's supervisors were well aware of the high number of narcotics arrests he was making and even questioned how he was able to do it. Despite their skepticism about O'Leary's unusual number of arrests, they never attempted to verify the evidence he claimed to be submitting in the form of photographs and substances, which they were required to do under agency policy. Further, O'Leary's evidence was clearly not suspected narcotics. Such blatant disregard for oversight amounts to a custom and policy of deliberate indifference.

**Defendant Sheriff:** This lawsuit arises out of a traffic stop by then-Martin County Sheriff's deputy Steven O'Leary on September 23, 2018 involving Weston Landis. Steven O'Leary was hired by the Martin County Sheriff's office on February 1, 2018. He had previously worked as a law enforcement officer for Marion County Sheriff's Office and Town of Palm Beach with no reports of misconduct. He was first assigned to the Martin County S.O.'s training unit for new recruit training and high liability certification until February 19, 2018, when he began field training. He completed field training on March 17, 2018 and was assigned to the Uniform Patrol Division. During his time in that Division, he was assigned to midnight shift where he received three satisfactory probationary evaluations.

Deleted: two
Deleted: s
Deleted: :
Deleted: one
Deleted: and a second traffic stop on October 14, 2018 that involved Robin Page and Fabricio Vasquez.

4

Case 2:20-cv-14460-AMC   Document 129   Entered on FLSD Docket 08/04/2023   Page 5 of 16

On September 23, 2018, at approximately 6 p.m., then-Deputy O'Leary conducted a traffic stop of Landis' truck on Monterey Road in Stuart, for obstructing the roadway by traveling at a slow speed and having non-working tag lights. O'Leary had K-9 Deputy Albauer respond to the scene who walked the K-9 around the vehicle. According to the arrest affidavit, the K-9 alerted to the presence of narcotics. Deputy Sheriff Albauer confirms that his K-9 alerted to the presence of narcotics. O'Leary reported to have found two caps full of a white substance that he believed was heroin and field tested for fentanyl. O'Leary then arrested Plaintiff Landis for Possession of a Controlled Substance Fentanyl and Possession of Drug Paraphernalia.

On January 10, 2019, the Martin County Sheriff's Office was alerted by the Martin County State Attorney's Office that the Indian River Crime Lab reported that three separate items of narcotics evidence which has been submitted by O'Leary failed to test positive for the listed controlled substance. As a result of the Crime Lab's findings, the State Attorney's Office dismissed three unrelated trafficking drug cases. In turn, MCSO conducted an internal administrative review of Deputy O'Leary's pending drug cases, suspended him and then terminated him for engaging in a pattern of official misconduct, fabricating evidence, false imprisonment, and false official statement, upon conclusion of the IA investigation. On or about February 22, 2019, the Indian River Crime Laboratory tested the "evidence found" by O'Leary during the Plaintiff's traffic stop, and the results showed "No controlled substances were identified." An arrest warrant was issued on July 26, 2019 for O'Leary, who has subsequently been convicted of and recently sentenced to 13 years in prison for his crimes.

Former Deputy O'Leary was a rogue officer who over a series of months covertly committed numerous criminal acts which led to his criminal convictions. His criminal actions were not known to or condoned by Sheriff Snyder of the Martin County Sheriff's Office,in any way, shape or form. Once notified by the SAO of the negative lab results in January of 2019, MCSO acted swiftly in removing Mr. O'Leary from his position as a deputy sheriff and thoroughly investigating the matter which revealed the breadth of his shocking criminal actions. Prior to the SAO's notification in Janurary of 2019, there were no formal or informal complaints of misconduct against O'Leary made by the Plaintiffs' or the other arrestees, by the crime lab, or by

**Deleted:** On October 14, 2018 at approximately 10:55 p.m. then-Deputy O'Leary conducted a traffic stop of a vehicle that was being drive by Plaintiff Page, with Plaintiff Vasquez as a passenger. The vehicle was stopped on US Highway 1 in Hobe Sound. O'Leary reported that he stopped them for running a stop sign when they pulled out of their neighborhood onto US Highway 1. He ordered Page and Vasquez out of the vehicle and had Deputy Albauer and his K-9 unit respond and walk around the vehicle. O'Leary reported that the K-9 alerted to the presence of narcotics. Deputy Sheriff Albauer confirms that his K-9 alerted to the presence of narcotics. O'Leary conducted a search of Page's vehicle and reported that he found crack cocaine on the driver's side floorboard and methamphetamine on the passenger side floorboard of the vehicle. O'Leary claimed the substances he found both field-tested positive for cocaine and methamphetamine in the presence of Deputy Albauer. O'Leary arrested Page for Possession of a Controlled Substance Crack Cocaine and Vasquez for Possession of a Controlled Substance Crack Cocaine and Possession of Methamphetamine.¶

**Deleted:** s

**Deleted:** s

Case 2:20-cv-14460-AMC   Document 129   Entered on FLSD Docket 08/04/2023   Page 6 of 16

the State Attorney's Office, that would have called into question O'Leary's truthfulness regarding his sworn probable cause affidavits/incident reports or physical evidence submitted in his arrests.

**2. *BASIS OF FEDERAL JURISDICTION:***

42 U.S.C. Section 1983

42 U.S.C. Section 1988

28 U.S.C. Section 1331 (federal question jurisdiction)

28 U.S.C. Section 1343(a)(3) (civil rights and elective franchise jurisdiction)

28 U.S.C. Section 1367 (supplemental jurisdiction)

**3. *PLEADINGS RAISING THE ISSUES:***

    A.  Plaintiffs' Amended Complaint [DE 10]

    B. Defendant Sheriff's Answer and Defenses to Amended Complaint [DE 23]

**4. *UNDISPOSED OF MOTIONS OR OTHER MATTERS REQUIRING ACTION BY THE COURT:***

    ~~A. Defendant Snyder's Daubert Motion to Exclude Certain Testimony of Plaintiff's Expert Dr. George Kirkham [DE 70].~~

    ~~B. Defendant Sheriff's Motion in Limine (to be filed)~~

    ~~C. Plaintiffs' Motion in Limine (to be filed)~~

    ~~D. Defendant Sheriff's Motion for Reconsideration (of his Motion for Summary Judgment) (to be filed)~~

**5. *CONCISE STATEMENT OF UNCONTESTED FACTS WHICH WILL REQUIRE NO PROOF AT TRIAL, WITH RESERVATION[1] IF ANY:***

---

[1] *[Deleted: The Defendant Sheriff reserves the right to revise these uncontested facts as, depending on the outcome of the Defendant Sheriff's Motion for Reconsideration of his Motion for Summary Judgment..]*

Case 2:20-cv-14460-AMC   Document 129   Entered on FLSD Docket 08/04/2023   Page 7 of 16

A. William Snyder was the elected Sheriff in Martin County, Florida at the time of the Plaintiffs arrest. He is named in his official capacity only. Sheriff Snyder is the final policy maker for the Martin County Sheriff's Office

B. At the time of the Plaintiffs arrest, Steven O'Leary was a sworn certified law enforcement officer who was employed by the Martin County Sheriff's Office. He was acting under color of state law at the time of the Plaintiffs' arrests.

C. Defendant Steven O'Leary completed basic recruit law enforcement training at Central Florida College on May 31, 2016.

D. Steven O'Leary then went on to pass the State of Florida Law Enforcement Exam on June 3, 2016 after two attempts.

E. Steven O'Leary was hired by the Marion County Sheriff's office on June 13, 2016.

F. While working for Marion County, O'Leary made a total of eleven narcotic arrests in his eleven months there. Two were felonies [Hydrocodone and Cocaine], and the rest were misdemeanor arrests.

G. O'Leary voluntarily left Marion County Sheriff's Office on May 22, 2017.

H. O'Leary was hired by the Town of Palm Beach Police Department on May 30, 2017.

I. During his time at the Town of Palm Beach, O'Leary issued 18 Notices to Appear for misdemeanor narcotics violations and made 4 felony narcotics arrests for Amphetamines, heroin and cocaine, hashish and heroine, and cocaine respectively in 8 months of working in that jurisdiction.

J. O'Leary voluntarily left the Town of Palm Beach Police Department on January 26, 2018.

K. Defendant Steven O'Leary was hired by the Martin County Sheriff's Office on February 1, 2018.

L. Once hired by Martin County Sheriff's Office, then-deputy Steven O'Leary was first assigned to the training unit for new recruit training and high liability certification until February 19, 2018, when he began field training with Field Training Officer Corporal W. Jaques.

M. Steven O'Leary completed field training on March 17, 2018.

N. On March 21, 2018, Steven O'Leary was assigned to the MCSO Uniform Road Patrol Division.

O. During his time in the Uniform Patrol Division, Steven O'Leary was assigned to midnight shift under supervisors Sergeant E. Brochu and Sergeant T. Baltes.

P. Steven O'Leary had three satisfactory probationary evaluations during that time.

Q. On September 23, 2018, at approximately 6 p.m., Defendant O'Leary conducted a traffic stop of Plaintiff Landis's truck on Monterey Road in Stuart for obstructing the roadway by traveling at a slow speed and having non-working tag lights.

R. During the traffic stop, Defendant O'Leary ordered Landis and his passenger out of the vehicle.

S. Defendant O'Leary had K-9 Deputy Albauer respond to the scene and walked the K-9 around the vehicle, who according to the arrest affidavit, alerted to the presence of narcotics.

T. Defendant O'Leary then conducted a search of Landis's truck.

U. Defendant O'Leary claimed he found two caps full of a white substance that he believed was heroin and field-tested for fentanyl.

V. Defendant O'Leary arrested Weston Landis for Possession of a Controlled Substance Fentanyl and Possession of Drug Paraphernalia.

W. Plaintiff Landis's arrest was documented under MCSO Case No. 18-17122.

X. ~~On October 14, 2018, at approximately 10:55 p.m. (22:55 hours), Defendant O'Leary~~

8

~~conducted a traffic stop on Plaintiffs Page and Vasquez on U.S. Highway 1 in Hobe Sound.~~

~~Y. Robin Page was driving a beige passenger car; Fabricio Vasquez was a passenger in the vehicle.~~

~~Z. Defendant O'Leary claimed he stopped them for running a stop sign when they pulled out of their neighborhood onto U.S. Highway 1.~~

~~AA. Defendant O'Leary ordered Page and Vasquez out of the vehicle and had Deputy Albauer and his K-9 unit respond and walk around the vehicle; claiming the K-9 alerted to the presence of narcotics.~~

~~BB. Defendant O'Leary then conducted a search of Page's vehicle.~~

~~CC. Defendant O'Leary claimed he found crack cocaine on the driver's side floorboard and methamphetamine on the passenger side floorboard of the vehicle.~~

~~DD. Defendant O'Leary claimed the substances he found both field-tested positive for cocaine and methamphetamine in the presence of Deputy Albauer.~~

~~EE. Defendant O'Leary arrested Plaintiff Page for Possession of a Controlled Substance Crack Cocaine.~~

~~FF. Defendant O'Leary arrested Plaintiff Vasquez for Possession of a Controlled Substance Crack Cocaine and Possession of Methamphetamine.~~

~~GG. Plaintiffs Page and Vasquez's arrests were documented under MCSO Case No. 18-18381.~~

HH. On January 10, 2019 the Circuit 19 State Attorney's Office, brought to the attention of the Martin County Sheriff's Office that the Indian River Crime Lab reported three separate items of narcotics evidence failed to test positive for the listed controlled substance

II. Sheriff's Office records showed that Steven O'Leary was the law enforcement officer

responsible for submitting all of those items for evidence.

JJ. As a result of the Crime Lab's findings, the State Attorney's Office dismissed three trafficking drug cases. In turn, Sheriff's Major Robert Seaman ordered an internal administrative review of Deputy O'Leary's pending drug cases.

KK. On January 11, 2019, Steven O'Leary was placed on administrative leave with pay by the Martin County Sheriff's Office.

LL. On January 14, 2019, the Martin County Sheriff's Office rescinded Steven O'Leary's probationary appointment with the Sheriff's office.

MM. On January 15, 2019, the State Attorney's Office filed Nolle Prosequi in ~~each of the three~~ Plaintiff's criminal case~~s~~ arising out of the subject arrest, (State v. Weston Michael Landis, Case No. 2018CF001325-A; ~~State v. Fabricio Vasquez, Case No. 2018CF001428-A and State v. Robin Christopher Page, Case No 2018CF001428-B)~~.

NN. On or about February 22, 2019, the Indian River Crime Laboratory tested the "evidence" submitted by Defendant O'Leary from his September 23, 2018 traffic stop of Plaintiff Landis and the results showed "No controlled substances were identified."

~~OO. On or about February 22, 2019, the Indian River Crime Laboratory tested the "evidence", which was submitted by Defendant O'Leary from his October 14, 2018 traffic stop of Plaintiffs Page and Vasquez and the results showed "No controlled substances were identified."~~

PP. On July 26, 2019, a 49-count Arrest Warrant was issued for Steven O'Leary.

QQ. This Arrest Warrant was issued based upon a Complaint Affidavit submitted by Martin County Sheriff's Office Detective Mark Diapoules which asserted that he had probable cause to believe that between February 2018 and January 2019, Steven O'Leary, while under the color of law, employed as a Deputy Sheriff for the Martin County Sheriff's Office, engaged in an

Case 2:20-cv-14460-AMC   Document 129   Entered on FLSD Docket 08/04/2023   Page 11 of 16

ongoing pattern of Official Misconduct, Fabricating Evidence, False Imprisonment, and False Official Statement.

RR. Detective Diapoules' Complaint Affidavit stated that MCSO's investigation regarding Steven O'Leary determined that while working as a deputy sheriff with the Martin County Sheriff's Office, Steven O'Leary made 79 total drug related arrests and that of those cases:

▪ 38 cases where the main controlled substance that the defendant was arrested for tested positive;

▪ 17 cases where the main controlled substance that the defendant was arrested for did not test positive but other substances tested positive for a controlled substance;

▪ 15 cases where the main controlled substance the defendant was arrested for did not test positive for a controlled substance;

▪ 5 cases where the main controlled substance the defendant was arrested for was misidentified but tested positive for a different controlled substance;

▪ 4 cases where the main controlled substance the defendant was arrested for was unable to be identified.

SS. Plaintiffs Landis', Page and Vasquez's subject arrests was were included in those cases that the main controlled substance that they were arrested for did not test positive for a controlled substance. (Landis – MCSO Case No. 18-17122The Complaint Affidavit stated that during Steven O'Leary's interaction with Plaintiff Landis he committed the crimes of Official Misconduct and False Imprisonment.

TT. The Complaint Affidavit stated that during Steven O'Leary's interaction with Plaintiffs Page and Vasquez he committed the crimes of Official Misconduct, Tampering with

11

~~Evidence and False Imprisonment.~~

VV. On August 9, 2019, in <u>State of Florida v. Steven O'Leary</u>, Case No. 2019CF000872, the State Attorney's Office filed a 50-count Information against Defendant O'Leary before Judge Bauer in Martin County Circuit Court which charged Defendant O'Leary with eighteen (18) counts of Official Misconduct, nine (9) counts of False Official Statement, eight (8) counts of Tampering With Evidence, thirteen (13) counts of False Imprisonment, one count of Second Degree Petit Theft and one count of Battery.

WW. These counts included his crimes involving Plaintiffs Landis, ~~Page and Vasquez~~. (Counts 3-4 and 35-36 (as to September 23, 2018)).

XX. On December 2, 2021, Steven O'Leary pled no contendere and was adjudicated guilty on all 50 counts of the Information.

YY. Steven O'Leary was given a multi-year sentence of imprisonment due to his crimes.

ZZ. According to the Florida Department of Corrections website, Steven O'Leary (DC #W61273) has a current release date of January 1, 2032.

AAA. Steven O'Leary met all of the requirements in accordance with Florida Statute Chapter 943 and CJSTC/FDLE to be a law enforcement officer and to enforce the laws of the State of Florida during all times pertinent to the allegations of the Amended Complaint in regard to Plaintiffs' arrests, including training on the requirement to have reasonable suspicion of criminal activity to justify an investigative detention and probable cause to make an arrest, as well as conducting lawful searches and seizures.

BBB. At all times pertinent to the subject arrests of Plaintiffs Westin Landis (which occurred on September 23, 2018), ~~as well as Robin Page and Fabricio Vasquez (which occurred~~

12

on October 14, 2018), Steven O'Leary was a certified law enforcement officer.

CCC. This means that he had completed a police academy and met the training requirements established by the CJSTC/FDLE to be a law enforcement officer in the State of Florida.

**6. STATEMENT OF FACTS WHICH REMAIN TO BE LITIGATED AT TRIAL:**

A. Whether Plaintiff Weston Landis's federal constitutional right to be free from unlawful searches and seizures was violated by Defendant Steven O'Leary.

B. Whether Plaintiff Robin Page's federal constitutional right to be free from unlawful searches and seizures was violated by Defendant Steven O'Leary.

C. Whether Plaintiff Fabricio Vasquez's federal constitutional right to be free from unlawful searches and seizures was violated by Defendant Steven O'Leary.

D. Whether probable cause existed for the arrest of Plaintiff Weston Landis.

E. Whether probable cause existed for the arrest of Plaintiff Robin Page.

F. Whether probable cause existed for the arrest of Plaintiff Fabricio Vasquez.

G. Plaintiffs submit: Did Sheriff William Snyder have actual or constructive knowledge of a need to train and/or supervise Deputy Steven O'Leary regarding lawful searches and seizures, in light of abnormalities in evidence and the description of collected evidence collected by O'Leary, and signed off by MCSO supervisors despite these irregularities, in combination with MCSO supervisors' knowledge of O'Leary's unusually high number of drug-related arrests.

Defendant Sheriff submits: Did Sheriff William Snyder have actual or constructive knowledge of a need to supervise Deputy Steven O'Leary in regard to lawful searches and seizures but made a deliberate choice not to provide additional supervision to Deputy Steven O'Leary?

H. Whether the Plaintiffs is entitled to an award of compensatory damages and, if so, in what amount.

*7. CONCISE STATEMENT OF THE ISSUES OF LAW ON WHICH THERE IS AN AGREEMENT:*

A. Probable cause to arrest exists where the facts and circumstances within an officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed an offense. *Marx v. Gumbinner*, 905 F.2d 1503 (11th Cir. 1990).

B. Plaintiffs federal constitutional claim to be free from unreasonable search and seizure is governed by the Fourth Amendment to the Constitution.

C. Plaintiffs federal constitutional claim to be free from false arrest and imprisonment is governed by the Fourth Amendment to the Constitution.

E. Defendant Steven O'Leary was acting in bad faith, or with malicious purpose, or in a manner exhibiting wanton, willful disregard of human rights, safety or property at all times pertinent to the Plaintiff's arrest.

*8. CONCISE STATEMENT OF ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT:*

*9. EXHIBIT LIST:*

The parties' Joint Exhibit List is attached hereto as Exhibit "A." The parties reserve the following objections in accordance with Local Rule 16.1(e)9: A, I, R, H, UP, P.

*10. WITNESS LIST:*

14

The Plaintiffs' Witness List is attached hereto as Exhibit "B". The Defendant Sheriff's Witness List is attached hereto as Exhibit "C".

**11. ESTIMATED TIME FOR TRIAL:**

The parties estimate that this matter, which is scheduled to be heard before a jury, will take approximately 5-7 days.

**12. ATTORNEYS' FEES ESTIMATE:**

Plaintiffs Amended Complaint contains a claim which is brought pursuant to 42 U.S.C. § 1983. As such, the prevailing party may be entitled to an award of attorneys' fees, pursuant to 42 U.S.C. § 1988 on that claim only.

Plaintiffs estimated attorneys' fees: To be determined by the Court. There are no caps on which fees can be awarded.

Respectfully submitted this 4th day of August, 2023.

/s/ Guy Bennett Rubin
Guy Bennett Rubin, Esq.
Florida Bar No. 691305
RUBIN & RUBIN
2055 S. Kanner Hwy.
Stuart, Florida 34994
Telephone: (772) 283-2004
grubin@rubinandrubin.com
dkrebs@rubinandrubin.com
*Attorneys for Plaintiffs*

/s/ Summer M. Barranco
Summer M. Barranco, Esq.
Florida Bar No. 984663
PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA P.A.
2455 East Sunrise Boulevard, Suite 1216
Fort Lauderdale, FL 33304
Telephone (954) 462-3200

15

summer@purdylaw.com
isabella@purdylaw.com
Attorneys for Defendant Sheriff William D. Snyder